IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

UNITED STATES OF AMERICA,

v.  Criminal Action No. 3:22cr167

DOUGLAS ENRIQUE LOPEZ-MOJICA,
Defendant.

## OPINION

In November 2022, a grand jury indicted Douglas Enrique Lopez-Mojica, an El Salvadoran national, on one count of illegal reentry, pursuant to 8 U.S.C. § 1326. Lopez-Mojica moves to dismiss the indictment, challenging the validity of a 2006 removal order issued by an immigration court in Michigan. He argues that he did not receive notice of the hearing, the lack of notice violated his due process rights, and the immigration court's order in absentia prejudiced him because he could have qualified for voluntary departure. The Court held a hearing on the motion on January 20, 2023, and allowed the parties to submit supplemental briefing. Having reviewed the supplemental briefing and the record, the Court finds that Lopez-Mojica has not met his burden to collaterally attack the 2006 removal order. Accordingly, the Court will deny his motion to dismiss the indictment.

## I. BACKGROUND

Beginning in 2001, Lopez-Mojica has snuck across the border into the United States multiple times. In August 2005, ICE officers questioned Lopez-Mojica in Michigan, where he had been detained on charges of driving while impaired and disorderly conduct. They served the defendant with a Notice to Appear ("NTA") at a hearing before an immigration judge. The NTA

included neither a date nor a time for the hearing.[1] Immigration services issued a Notice of Hearing ("NOH"), which set the hearing for September 26, 2005, by fax to the custodial officers at the jail where Lopez-Mojica was detained. Lopez-Mojica denies receiving this NOH.

Immigration services mailed a second NOH on September 15, 2005, to an address provided in Lopez-Mojica's bond paperwork. The second NOH gave notice that the hearing had moved to November 22, 2005. Lopez-Mojica denies receiving the second NOH. When he did not attend the November 22, 2005, hearing, immigration services mailed Lopez-Mojica a third NOH to give him notice that the hearing had moved to January 31, 2006. Although Lopez-Mojica admits he lived at the address to which immigration services mailed the third NOH (the "Clawson address"), he denies receiving the third NOH. He returned to El Salvador in December 2005. The immigration court conducted a hearing in absentia on January 31, 2006, and entered an order of removal.

Lopez-Mojica has since unlawfully entered the country multiple times. The government has removed him three times pursuant to the 2006 removal order: in May 2006, in February 2008, and then again in January 2010, following a conviction for illegal reentry in this Court. (Criminal Action No. 3:09cr330.) In 2021, Richmond Police arrested him on a felony charge. (ECF No. 19, at 5.) A state court convicted Lopez-Mojica and sentenced him to 20 years with 17 years, 11 months suspended. (*Id.*) In November 2022, a grand jury indicted Lopez-Mojica on one count of illegal reentry.

---

[1] Lopez-Mojica testified that he does not speak English and cannot read English. His motion notes that immigration services provided some documents in English and others with a translation into Spanish. He denies receiving any Notice of Hearing ("NOH"). Accordingly, the Court finds that no part of Lopez-Mojica's motion rests on whether he received notice in a language he could understand, but simply whether he received proper notice of his removal hearing.

## II. LEGAL STANDARD

The defendant bears the burden of proof on a motion to dismiss an indictment. An indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Cr. P. 7(c)(1). "[A]n indictment is sufficient if it alleges an offense in the words of the statute . . . . More specifically, an indictment is legally sufficient if . . . it alleges the essential elements of the offense." *United States v. Rendelman*, 641 F.3d 36, 44 (4th Cir. 2011). Accordingly, a court should dismiss an indictment if it fails to allege an essential element of the charged offense.

An individual who "has departed the United States while an order of exclusion, deportation, or removal is outstanding, and thereafter . . . enters, attempts to enter, or is at any time found in, the United States . . . shall be fined under Title 18, or imprisoned not more than 2 years, or both." 8 U.S.C. § 1326(a). In illegal reentry cases, a court must dismiss the indictment when the defendant establishes the removal order does not exist or is invalid.

In a criminal proceeding, a defendant may collaterally attack the underlying removal order if (1) the defendant has exhausted all administrative remedies; "(2) the deportation hearings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair." *Id.* § 1326(d). The defendant must establish each of the three elements by a preponderance of the evidence. "[I]f the defendant satisfies all three requirements, the illegal reentry charge must be dismissed as a matter of law." *United States v. El Shami*, 434 F.3d 659, 663 (4th Cir. 2005).

The defendant may establish the first two prongs in § 1326(d) by asserting he did not receive notice of the removal proceedings. *Id.* at 663–64. An individual subject to removal proceedings shall receive written notice "specifying . . . [t]he nature of the proceedings against the

3

alien[;] . . . . [t]he time and place at which the proceedings will be held[;] . . . [and t]he consequences under section 1229a(b)(5) of this title of the failure, except under exceptional circumstances, to appear at such proceedings." 8 U.S.C. §§ 1229(a)(1)(A), (G)(i)-(ii). "The written notice by the Attorney General shall be considered sufficient for purposes of this subparagraph if provided at the most recent address provided under section 1229(a)(1)(F) of this title." *Id.* § 1229a(b)(5)(A). An individual who does not attend the removal hearing "shall be ordered removed in absentia if the Service establishes by clear, unequivocal, and convincing evidence that the written notice was so provided and that the alien is removable." *Id.* A defendant does not have notice when he has not received written notice of the date and time of a deportation hearing. *El Shami*, 434 F.3d at 663.

For the third prong, "[t]o demonstrate fundamental unfairness, 'a defendant must show that (1) his due process rights were violated by defects in his underlying deportation proceeding, and (2) he suffered prejudice as a result of the defects.'" *Id.* at 664 (quoting *United States v. Wilson*, 316 F.3d 506, 510 (4th Cir. 2003) *abrogated on other grounds by Lopez v. Gonzales*, 549 U.S. 47 (2006)). "[T]o meet the actual prejudice requirement, [the defendant] must demonstrate 'that, but for the errors complained of, there was a reasonable probability that he would not have been deported.'" *United States v. Lopez-Collazo*, 824 F.3d 453, 463 (4th Cir. 2016) (quoting *El Shami*, 434 F.3d at 665). "[T]he defendant must link the actual prejudice he claims to have suffered to the specific due process violation at issue." *Id.* A defendant cannot establish fundamental unfairness if "his deportation was a foregone conclusion at that time" of the removal hearing. *Id.* at 465–66.

4

## III. DISCUSSION

The indictment against Lopez-Mojica states

DOUGLAS ENRIQUE LOPEZ-MOJICA, an alien who had previously been removed from the United States on May 8, 2006, again on February 8, 2008, and again on January 21, 2010, was found in the United States without having obtained the express consent of the Attorney General or his successor, the Secretary of Homeland Security, to reapply for admission to the United States. (in violation of Title 8, United States Code, Section 1326(a), (b)(1)).

(ECF No. 4.)

Lopez-Mojica launches a collateral attack on the 2006 removal order. He argues that he did not receive notice and that the immigration court's entry of the removal order was fundamentally unfair. Because Lopez-Mojica has not satisfied his burden as to notice and fundamental unfairness, his collateral attack on the 2006 removal order fails. Accordingly, the Court will deny his motion to dismiss the indictment.

### *A. Lack of Notice*

Lopez-Mojica contends that he has satisfied the first two requirements in § 1326(d) because he did not receive notice of his removal hearing. He advances two arguments: first, the omission of a time and place in the NTA violated his due process rights, creating a fatal flaw that no subsequent NOH could remedy; and second, he did not receive any of the three NOH.

#### *1. The NTA Omitted the Time and Place of the Hearing*

Lopez-Mojica argues that the absence of time and place in the NTA violated his right to due process because he did not have notice of the removal hearing. He further argues that the three NOHs that included the time and place of his removal hearing could not remedy the omission in the NTA. Lopez-Mojica draws on *Pereira v. Sessions*, 138 S. Ct. 2105 (2018), and *Niz-Chavez v. Garland*, 141 S. Ct. 1474 (2021), which interpreted the notice requirement for the stop-time rule as it relates to the cancellation of removal for certain aliens. *Pereira* held that an NTA must include

5

the time and place of the hearing to constitute notice and to trigger the stop-time rule. In the same context, the *Niz-Chavez* Court held that including the time and place of the hearing in a subsequent NOH does not cure the NTA's omission. The *Pereira* Court stressed that its holding addressed a "narrow question." *Pereira*, 138 S. Ct. at 2110. The defendant cites a single unpublished case out of the Western District of Virginia, which found that *Pereira* did apply to removal hearings held in absentia. *United States v. Ramos-Delcid*, 2018 WL 5833081, 3:18cr20 (W.D. Va. Nov. 7, 2018). In the intervening years, no other court has so held.

Instead, the Court follows the plain language of the statute, which allows for removal in absentia when an alien receives either an NTA *or* an NOH. 8 U.S.C. § 1229a(b)(5)(A). Section 1229a mandates removal in absentia when "[a]ny alien who, after written notice required under paragraph (1) *or* (2) of section 1229(a) of this title has been provided to the alien . . . , does not attend a proceeding under this section." *Id.* (emphasis added). Section 1229(a)(1) details the NTA, and section 1229(a)(2) details the NOH. The statute plainly contemplates a NOH as sufficient notice. Although the NTA in this case did not include a time or place of hearing, each of the three NOHs did.

### 2. *Lopez-Mojica Asserts He Did Not Receive Any NOH*

Lopez-Mojica argues that he did not receive any of the three NOH and the lack of notice violated his right to due process.[2] The government receives the benefit of the mailbox rule, the

---

[2] Lopez-Mojica did not raise this challenge when the government first prosecuted him for illegal reentry in 2010. Instead, he pleaded guilty "knowingly and voluntarily . . . and with an independent basis in fact to support [his] plea." (Criminal Action No. 3:10cr330, ECF No. 11 ¶ 6.) Courts in other circuits have found the defendant waived this argument by not presenting it earlier. *See United States v. Calan-Mantiel*, 4 F.4th 497, 497 (7th Cir. 2021) ("§ 1229(a)(1) is a claims-processing rule whose benefits can be waived or forfeited if not timely asserted.") (citing *Ortiz-Santiago v. Barr*, 924 F.3d 956 (7th Cir. 2019); *United States v. Manriquez-Alvarado*, 953 F.3d 511, 514 (7th Cir. 2020) ("[8 U.S.C. § 1229(a)(1) creates a procedural right that is lost if not asserted or the failure excused, and we applied that rule to an alien whose removal order predated

6

presumption of delivery. *Nibagwire v. Gonzales*, 450 F.3d 153, 154 (4th Cir. 2006) ("When the Department of Homeland Security (DHS) serves an alien with notice of a removal hearing by regular mail, as allowed by current law, the agency is entitled to a presumption of effective delivery."). The government has provided some evidence to support this presumption, including the testimony of an ICE officer and records of notices sent. By testifying that he did not receive notice by mail, however, Lopez-Mojica has rebutted the presumption of delivery.

The Court now considers each party's evidence as to the delivery and receipt of the third NOH. The government has provided evidence that it sent the third NOH to the Clawson address, where Lopez-Mojica admitted he lived. Immigration services properly addressed the third NOH to Lopez-Mojica. It mailed the third NOH locally from Detroit on November 22, 2005.[3]

Lopez-Mojica's evidence consists solely of his testimony. Although sufficient to rebut the presumption of delivery, it does little to support his assertion that he did not receive notice. Lopez-Mojica testified that he and three other people lived at the Clawson address, and that he lived at the Clawson address until sometime in December 2005. He testified, without specificity, that he did not receive that NOH. *See United States v. Diaz-Martinez*, 380 F. Supp. 3d 486, 502 (E.D. Va. 2019) (finding that the following specific testimony established the defendant did not receive notice: that the witness had not received other letters in that same timeframe, that a single person consistently collected the mail each day, that the mailbox remained locked with a key). Lopez-Mojica only testified that his roommates "didn't receive anything. They always give all the papers

---

*Pereira*."). The Court need not consider whether Lopez-Mojica has waived this argument because neither party raises this issue.

[3] Lopez-Mojica estimates the distance between Detroit and Clawson as approximately 25 miles. (ECF No. 19, at 15.)

7

to my brother." (Hr'g Tr. 60:12–13.) Lopez-Mojica's brother did not testify and did not submit an affidavit to the Court.

On balance, the Court finds it more likely than not that Lopez-Mojica did receive the third NOH. Immigration service mailed it to his address in November 2005. Lopez-Mojica did not leave the Clawson address for El Salvador until the following month. Although Lopez-Mojica had multiple roommates, none of them testified to support his assertions. Because Lopez-Mojica cannot establish that he lacked notice of his hearing, he fails to satisfy the first two requirements for a collateral attack on a removal order. *See El Shami*, 434 F.3d at 664.

### B. Fundamental Unfairness

Lopez-Mojica must establish by a preponderance of the evidence that the removal proceedings lacked fundamental fairness. He argues that he "would have, *at a minimum*, qualified for voluntary departure" but for the lack of notice of the hearing. (ECF No. 19, at 21.) He "would likely not have been deported if he appeared at his immigration hearing in January 2006." (*Id.*) But Lopez-Mojica has presented no evidence that he would have applied for either pre-order voluntary departure or post-conclusion voluntary departure. He did not testify to this, and he submitted no affidavit to this effect. *See Diaz-Martinez*, 380 F. Supp. 3d at 506, 507 ("In the absence of such evidence (as here), his prejudice claim must fail.") Furthermore, the Court doubts whether he would have attended his removal hearing.

Lopez-Mojica testified that he returned to El Salvador in December 2005 because he could not find work in landscaping during the Michigan winter. He returned to El Salvador "because there wasn't any more work, working out, and cleaning, and I didn't have the money to pay my rent." (Hr'g Tr. 57:22–24.) Further, Lopez-Mojica testified that, although he did not know the date, he knew he had a hearing coming up when he left for El Salvador. (*Id.* at 61:16–19.) His

8

testimony establishes that his inability to find work and pay his rent drove his decision to return to El Salvador, even though he understood he had an important hearing coming up. (*See id.* at 62:4–8 ("Q: And you were concerned about the immigration court, but if you couldn't afford to live here you couldn't afford to stay here and attend a hearing whenever you found out the date – A: Yes.").) Even if a lack of notice violated Lopez-Mojica's due process rights, he cannot show that, but for the lack of notice, he would not have been deported when his own testimony indicates he would not have attended the removal hearing. Because he testified that he could not afford to remain in the country to attend his removal hearing, and he has presented no evidence that he would have sought voluntary departure, he has not established that the removal proceedings lacked fundamental fairness.

## IV. CONCLUSION

Because Lopez-Mojica has not established, by a preponderance of the evidence, that he did not receive notice of his January 2006 removal hearing and that this lack of notice prejudiced him, he has not satisfied all three § 1326(d) requirements. Accordingly, the Court will deny the motion to dismiss the indictment.

The Court will issue an appropriate Order.

Let the Clerk send a copy of this Opinion to all counsel of record.

/s/
John A. Gibney, Jr.
Senior United States District Judge

Date: 11 May 2023
Richmond, VA